HAZARD v. WIGHT.

(Supreme Court, Appellate Division, Fourth Department. May 4, 1910.)

BANKRUPTCY (§ 140*)—ADMINISTRATION OF ESTATE—PROPERTY VESTING IN TRUSTEE—OWNERSHIP.

    Several persons who had conducted a crockery business owed defendant $750, and one of them became bankrupt. At the request of such persons, defendant agreed to purchase the bankrupt stock, which was appraised at $17,000, and to continue the business on condition that he be paid the amount due him and $1,000 in addition to the amount he paid for the stock, which was $5,250, and thereafter the corporation represented by plaintiff trustee in bankruptcy was organized, and the stock turned over to it under an agreement that defendant should be repaid the amount of his indebtedness, and a number of shares of the corporation were transferred to him as collateral security for the payment thereof. Defendant afterwards surrendered his claim for $1,000. The indebtedness was paid from the assets of the corporation and other sources, whereupon defendant resigned as president and director and transferred his shares as directed by one of the organizers of the corporation. No one became a creditor of the corporation relying on any facts which were concealed in the transaction between defendant and it, such transaction being open, and defendant only received the amount actually owing him. *Held*, that the trustee in bankruptcy of the corporation was not entitled to recover the money received by defendant on the ground that it belonged to the corporation.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

    Spring and Robson, JJ., dissenting.

---

Appeal from Trial Term, Oneida County.

Action by Frederick H. Hazard, as trustee in bankruptcy of the Utica Crockery Company, against Rosell E. Wight. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Edmund J. Wager, for appellant.
Vasco P. Abbott, for respondent.

McLENNAN, P. J. One Madoc prior to June 21, 1906, was conducting a crockery business in the city of Utica, N. Y., and went into bankruptcy owing the defendant $350, and one Pike, who had formerly been associated with Madoc in such business, owed defendant $400. One Wilcox had been employed by Madoc as bookkeeper. Prior to June 21, 1906, the bankrupt stock of Madoc had been appraised at upwards of $17,000. Pike and Wilcox applied to the defendant to induce him to purchase said stock, and turn it over to them, so that they might continue the business of Madoc. The defendant agreed to make such purchase upon condition that he should be paid the amount owed him by Madoc and Pike and $1,000 in addition to such amount as he might pay for the stock of goods, and he subsequently bid and paid for such stock of goods and fixtures the sum of $5,250. Soon thereafter the plaintiff corporation was organized at a capital stock of $10,000, and the goods purchased by the defendant, being the bankrupt stock of Madoc, was turned over to it. It was agreed at the time of the incorporation of the plaintiff company that the payments should be made to the defendant until he was fully paid, and as a part of such agreement or transaction 98 shares of stock of the plaintiff corporation were transferred to the defendant as collateral for the payment of his said indebtedness, upon the payment of which indebtedness said stock was to be transferred at the direction of Wilcox. The defendant thereafter surrendered his claim for $1,000 for services and expenses, thus reducing the indebtedness to $5,750. Such indebtedness was paid from sources outside of the assets of the company, and also from the assets of the company. When the full amount of such indebtedness to the defendant was paid, he transferred his 98 shares of stock which he had as collateral, and his interest in the corporation ceased. There is no suggestion in the evidence that the defendant had at any time received any money from said corporation which it did not actually owe him for the goods which he had actually transferred to it and the finding of the referee is to that effect. There was no concealment of the transaction. There is no pretense that any creditor of the plaintiff corporation became such relying upon any facts which were concealed or undisclosed by the defendant so far as his transactions with the corporation were concerned.

The statement in appellant's brief that the defendant sold the aforesaid merchandise and fixtures to the corporation for $10,000 and took in exchange for them 98 shares of the capital stock is not borne out by the evidence. Such 98 shares of stock were transferred to him as collateral to the indebtedness which the corporation owed him for

goods actually paid for by him and delivered to it. He did not make a cent out of the transactions, and no one was deceived by any transaction which he had with it.

It seems to me that the judgment is right, and should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except SPRING and ROBSON, JJ., who dissent.

SPRING, J. (dissenting). It seems to me that this judgment ought not to stand. The stock and fixtures of Madoc, who had gone into bankruptcy, were appraised on the 21st of June, 1906, at the value of about $17,000. On that very day the defendant purchased them from the trustee in bankruptcy for $5,250. He turned the stock over to Wilcox and Pike, and they agreed to pay him $6,750 for the stock, which purchase price included $1,000 bonus that the defendant was to receive above his indebtedness. The defendant took their notes for $5,250 and another note for $1,000. He was to retain title in the stock and fixtures sold until his notes were paid. Apparently he did not believe the security was adequate for his indebtedness, as he took collateral security for a considerable amount, including life insurance policies transferred to him.

On the 4th of August of that year the parties decided to incorporate. The defendant was one of the original subscribers, agreeing to take 98 shares par value of the capital stock of $10,000. Wilcox took one share and his wife one share. The defendant was president and one of the directors, and Wilcox and his wife were, respectively, secretary and treasurer of the company. The 98 shares of stock were issued directly to the defendant, although by a contract between the parties they were to be transferred to Wilcox when the indebtedness to the plaintiff was paid. The original notes were not taken up or the collateral security retransferred to Wilcox. The corporation commenced business promptly, and out of the gross receipts of the business payments were made from time to time on the indebtedness which the defendant had against Wilcox. A considerable part of the avails of the business were so used, although part of his indebtedness was paid from other sources than these gross receipts. In January, 1907, another contract was made whereby Wilcox agreed to purchase the 98 shares of the capital stock of the company held by the defendant, and to pay the balance of his indebtedness, about $3,800, in the manner stipulated in the agreement. This agreement was not fully consummated until June following.

During all the time of the life of the corporation there was no meeting of the stockholders or directors until the 15th of June, 1907, when the defendant, on the assumption that his claim had been paid in full, resigned the office of president and transferred all his stock in said corporation to Wilcox, claiming to act in compliance with the agreements heretofore mentioned. A week later an involuntary petition in bankruptcy was filed against said corporation, and it was finally adjudicated a bankrupt by the United States District Court for the Northern District of New York. The trustee took possession of the

property, reduced it to possession, and realized therefrom only $3,-561.43. During the life of the corporation, and while the defendant was president and director, goods were purchased on credit, obligations were incurred, and remain unpaid for the reason, to some extent at least, that the gross receipts were applied in payment of the defendant's original claim. It seems plain, therefore, that the defendant made this transfer on the 21st of June in anticipation of the insolvency of the corporation of which he was then holding 98 shares of the capital stock. He then for the first time claimed that his indebtedness had been paid in full. As president of the corporation and one of its directors he was chargeable with knowledge of its condition. He must have known, therefore, that the capital stock was being constantly depleted by applying the gross receipts of the business in payment of his obligations given by Wilcox to him. The stock and fixtures which he sold to the corporation constituted its entire assets. Now, the transaction may have been honest enough between the defendant and Wilcox, but the rights of creditors intervened. A president and director of a corporation which has sold a considerable part of the property which constitutes its entire capital ought not to be permitted to have the proceeds of the sale of that property applied toward his own indebtedness, which is not, in form at least, against the corporation, but is against an individual. This appropriation of the avails of the sales of the goods was more pernicious than paying dividends out of the gross receipts of a corporation with inadequate assets to meet its existing obligations.

The referee has found that the assets were worth $17,000. I think this finding is against the weight of the evidence. I do not care so much what witnesses say in fixing the value, but there are a few facts which show the incorrectness of this finding. In the first place, as already adverted to, the defendant purchased the stock for $5,250, and, when he sold it to Wilcox and Pike, exacted security in addition to holding the title to this stock of goods. Again, the referee in bankruptcy has only received a little more than $3,500 from the sale of this property. While this only represented a part of the original corporate property, for sales had been made and the avails applied in payment of the defendant's obligations, yet the stock of goods had been replenished from time to time to some extent by purchases on credit, and not yet paid for.

I think the judgment should be reversed.

ROBSON, J., concurs.